This is an action to recover damages, originally brought in the insolvency court of Hamilton county by a property owner against the city of St. Bernard, to recover damages caused by the adoption of a grade of the street in front of her property, which is alleged to be an unreasonable grade. The action of the city establishing the grade occurred on March 13, 1914. Mrs. Gohman and her predecessors in title had *Page 728 
owned the real estate many years prior to that date, and had erected improvements thereon prior to the adoption of any grade by the municipality, and in so doing attempted to anticipate a reasonable grade thereafter to be established. The grade as actually established by the city in 1914 raised the street in front of her property several feet, thereby interfering with drainage and access. On January 15, 1915, this action was begun to recover damages, and, upon trial, verdict and judgment were recovered against the city. Error was prosecuted therefrom to the Court of Appeals, which court reversed the judgment for alleged error in the charge of the trial court on the subject of the measure of damages. The Court of Appeals remanded the cause for new trial, and in its written opinion attempted to instruct the trial court as to a proper charge to be delivered on the subject of the measure of damages, in the following language:
"The measure of damages, in cases where the established grade is unreasonable, is the difference between the amount of damages which would have resulted to the party from the establishment of a reasonable and proper grade, and that resulting from the grade actually established."
No other errors were found by the Court of Appeals at that time.
Thereafter, in the course of time, the cause was again tried in the insolvency court, and that court in the charge to the jury and as a part of its instruction upon the subject of measure of damage quoted the instruction of the Court of Appeals. As a result of that trial, another verdict *Page 729 
in a much larger sum was returned against the city. Thereupon error was again prosecuted to the Court of Appeals. The first error proceeding in the Court of Appeals was heard in 1919 by the Court of Appeals of the First Appellate District, and the second proceeding was in 1924 by the judges of the Fourth District, sitting by designation, and upon this second review the court again reversed and remanded and stated in its opinion that the pronouncements of the court upon the former review were erroneous and that the measure of damage had not been correctly stated. In reversing the second judgment the Court of Appeals certified the cause to this court for review and final determination on the ground that its judgment was in conflict with a judgment in another case decided by another court of appeals involving the same question.
We have carefully compared the opinion of the Court of Appeals upon the first review with the charge of the trial court in the second trial, and find that while the portion of the instructions of the Court of Appeals above quoted was faithfully given to the jury, there were other portions which materially modified the language above quoted.
It is the claim of counsel for Mrs. Gohman that the appellate court having laid down a rule for measure of damages, the same has become a binding rule between the parties to this controversy, under the well-known doctrine of the "law of the case." This well-known doctrine, which has almost universal application throughout the states of the Union, and in the federal courts, and *Page 730 
which has received approval in hundreds of cases under a great variety of circumstances, will be found concisely stated in 4 Corpus Juris, at page 1093:
"It is a rule of general application that the decision of an appellate court in a case is the law of that case on the point presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested."
The courts of every state in the Union, except Delaware and Wyoming, have approved the doctrine, and we are unable to find that either of those states has disapproved it. The cases in which the doctrine has been declared present a great variety of circumstances, and the rule has been stated in various jurisdictions with many variations and qualifications. The doctrine of the law of the case differs in many important respects from stare decisis and res adjudicata, and yet has many things in common with both of those doctrines. By the great majority of cases it is not declared as a rule of substantive law, but rather as a rule of practice. It should be stated at the outset of this decision that we do not approve it as a rule of binding force, but as a salutary rule of practice, which should be applied in all cases where it may be employed as a shield against endless litigation, and to compel obedience of trial courts to the mandates of reviewing courts, *Page 731 
and not as a sword which may be employed as an instrument of oppression and injustice. The rule is generally confined to civil cases, and although we have not been able to examine all of the cases in which this doctrine has been discussed and applied, we have found that only in the state of Kansas has it been applied where life or liberty has been in jeopardy. Manifestly, it should not be so applied. It is contrary to the spirit of our institutions to permit any technical rule of practice to interfere or to prevent any person whose life or liberty is in jeopardy from invoking every rule of substantive law which may be urged in his behalf.
We are therefore only considering and contending for a rule to be applied in civil cases, and, in any case, to be applied as a rule of practice, with the injunction that the court should refuse to apply it in any exceptional case where it may be made the instrument of oppression or injustice. When so declared and applied, we are of the opinion that the rule is a most salutary one in the interest of more orderly administration of justice. The rule originated in the necessity of a trial court obeying the mandate of an appellate court upon the retrial of a cause. Manifestly, an appellate court would be rendered impotent if its orders could be ignored at will, and if it were required to relitigate the same question in the same case upon subsequent and probably numerous appeals. If this rule be not employed, it may happen that where frequent changes occur in the personnel of a reviewing court, or where courts from other districts are designated to sit in second or subsequent *Page 732 
reviews of a case, as provided in the state of Ohio, the same case may be shuttled back and forth from trial court to reviewing court without limit. If the rule shall not be applied, a party who has received an adverse judgment in the reviewing court will be encouraged to retry the case and thereby gamble upon the probability of a favorable judgment at the hands of the trial court or jury, knowing that the way is open to him at any time to again gamble with the Court of Appeals composed of a different personnel, and when the end of proceedings has been reached in the trial court and Court of Appeals the way would then be open to the Supreme Court for a final presentation of his views untrammeled by any declarations that might have been made in the lower courts through a long course of extended litigation. In the meantime it may very well happen that a powerful litigant will have completely exhausted his weaker adversary and find it wholly unnecessary to prosecute an error proceeding to the court of last resort for a determination of legal principles or the controversy itself. When a case has once been tried in the court of common pleas, and error prosecuted to the Court of Appeals, and judgment reversed for errors in the trial, if counsel is not satisfied with the declaration found in the opinion of the Court of Appeals and the rule of law therein declared as applicable to his controversy, no reason is perceived why he should not apply for certiorari to this court, thereby taking a short cut to the goal he seeks rather than return to the trial court for a long and expensive trial and another error proceeding *Page 733 
to the Court of Appeals before seeking the only effective relief which can really avail him anything in the court of last resort.
The doctrine of the law of the case is analogous to estoppel, and when a party elects to return to the trial court for another trial, instead of immediately proceeding to a higher court for a review of legal principles applicable to his case, he should be held to have elected to adopt the principles declared by the Court of Appeals and to be estopped from further questioning the same in that particular controversy.
It should further be stated in this connection that when a rule made on a first review is held to estop a party from prosecuting a second review upon the same proposition, the courts do not regard the rule so declared as a precedent in other cases unless it is sound. The rule above quoted from Corpus Juris has unfortunately had some doubt thrown upon it by the following language found on page 1104 of the same volume:
"As a general rule the decision of an intermediate court is not conclusive on appeal to a court of last resort."
This unfortunate statement is not supported by any of the cases cited in the footnote, to wit, Buster v. Wright, 135 F., 947, 68 C.C.A., 505; Chicago Bd. of Trade v. Nelson,162 Ill. 431, 44 N.E. 743, 53 Am. St. Rep., 312; Henning v.Eldridge, 146 Ill. 305, 33 N.E. 754. In each and all of those cases there had been a reversal in the intermediate court and a remand without directions, and in those cases the judgment of the reviewing court was not a final judgment from *Page 734 
which an appeal or writ of error would lie to the court of last resort. It was particularly stated that if the judgment of the appellate court was such that no further proceedings could be had in the trial court, except to carry the mandate of the appellate court into effect, that an appeal would lie. It was further particularly stated in Henning v. Eldridge, supra, in the syllabus:
"If a party is dissatisfied with the determination of the Appellate Court, his only means of redress in that court is by petition for rehearing, and in the absence of the allowance of such a petition all final orders and judgments of the court are, as between the parties to the suit, res judicata, and binding on them whenever they again arise in that court between the same parties, upon the same record. The Appellate Court cannot review its own decisions except on rehearing."
It will therefore be seen that in that case the Supreme Court of Illinois not only affirmed the doctrine which had been repeatedly declared by that court, but even went much farther than the courts of other states, and much farther than this court has any intention of going in the instant case. Those decisions are not only in harmony with the rule we contend for, but they set forth an additional reason why the rule is a safe and a salutary one. This court has repeatedly refused to entertain jurisdiction of causes where litigants have failed to exhaust their statutory remedies, and having taken that stand in that class of cases no one may justly criticize a rule of practice which leads to the same result.
While as before stated there has been practical *Page 735 
unanimity among the American courts in declaring and applying this doctrine, certain text-writers and annotators have unnecessarily clouded the doctrine by the discussion of a few exceptional cases, some of which are in fact substantial departures from the rule, others of which adhere to the rule in general terms but declare certain exceptions to its application. These departures and exceptions are so few in number as not to detract from the weight of the authorities which support the rule. In 2 Ruling Case Law, at page 226, we find:
"It must be conceded that most courts hold that the decision on a prior appeal is conclusive, however erroneous. * * * It is a final adjudication from which the court cannot depart or the parties release themselves."
The same text-writer gives it as his opinion, supported by Kansas and Nebraska authorities, that the better rule is that the doctrine is "not an inflexible rule, and if the prior decision is palpably erroneous it is competent for the court to correct it on the second appeal." That author is not justified in so broad a declaration by the cases cited in the footnote. In the case of Missouri, Kansas Texas Ry. Co. v. Merrill,65 Kan. 436, 70 P. 358, 59 L.R.A., 711, 93 Am. St. Rep., 287, the Supreme Court of that state overruled a former decision and declared:
"If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before the litigation in which the error has been committed has terminated finally."
This is, of course, a departure from the rule. *Page 736 
It may be that there was a flagrant error which could not be justly overlooked. However that may be, it is quite certain that the state of Kansas has gone farther than any other state in declaring the rule of "the law of the case." The rule was clearly and concisely stated in a civil case (Frankland v. Cassaday, 62 Tex. 418), and in two homicide cases decided since the case of Missouri, K. T. Ry. Co. v.Merrill. In State v. Morrison, 67 Kan. 144, 72 P. 554, a homicide case, the court declared:
"All questions of law once considered and determined on a former appeal become the law of the case and are conclusive upon a second appeal to the same appellate court."
In State v. Campbell, 73 Kan. 688, 85 P. 784, 9 L.R.A., (N.S.), 533, 9 Ann. Cas., 1203, it was held that:
"A former judgment of this court holding an indictment sufficient in substance is the law of the case. All questions in this case raised by the motion in arrest of judgment are controlled by the former decision."
This doctrine was again announced in a civil case, inBuck Stove Range Co. v. Vickers, 80 Kan. 29, 101 P. 668. The state of Kansas is therefore clearly and strongly in line with the other states favoring the rule.
The stand taken by the Supreme Court of Nebraska is indeed peculiar. The editor of Ruling Case Law, and other writers who seem not to favor the rule, cite the case of City of Hastings
v. Foxworthy, 45 Neb. 676, 63 N.W. 955, 34 L.R.A., 321. This case and its history must receive *Page 737 
more extended comment. That case was disposed of March 5, 1896, and the statement shows that the cause of action accrued January 1, 1886, and that it had been before the Supreme Court of Nebraska on three separate previous appeals. The same case is therefore reported in Foxworthy v. City of Hastings,23 Neb. 772, 37 N.W. 657; Id., 25 Neb. 133, 41 N.W. 132; Id.,31 Neb. 825, 48 N.W. 901, and City of Hastings v. Foxworthy,45 Neb. 676, 63 N.W. 955, 34 L.R.A., 321. It was remanded for the fourth time for new trial more than ten years after the cause of action accrued. It will be difficult to find any situation which would better illustrate the salutary effect and the necessity of a rule which would tend to bring litigation to an end within the lifetime of the litigants. This case should be classed as a leading case in support of the maxim that justice delayed is justice denied. In an opinion of much more length than logic, the court attempts to severely criticize the doctrine of the law of the case, and yet in the syllabus the general features of the rule are upheld and it is only declared that the appellate court is not bound to follow its former opinions. The Nebraska reports have a large number of cases declaring and upholding this doctrine and the Hastings case
does not overrule any of them, but it is only stated that the case of Hiatt v. Brooks, 17 Neb. 33, 22 N.W. 73, is modified. The opinion in the Hastings case was filed June 22, 1895, and one day earlier, to wit, June 21, 1895, the same court decided the case of Ripp v. Hale, 45 Neb. 567, 64 N.W. 454. At page 568 of the opinion (64 N.W. 455) we find the following: *Page 738 
"The rule of law which was announced in the former decision (meaning the former appeal) as being applicable to the facts became the law of the case and must now be allowed to govern in its disposition, and, viewed in the light of such rule, the evidence was sufficient to sustain the verdict rendered."
In Holt v. Schneider, 61 Neb. 370, 85 N.W. 280, decided in 1901, the Nebraska Supreme Court declared as a binding rule that:
"Where on appeal a question involved in the controversy is clearly presented and fully determined, the decision thereon will be deemed to be the law of the case in all subsequent proceedings, binding alike on the trial court and in this court on another appeal."
The Supreme Court of Nebraska has adhered to this doctrine more firmly, if not more consistently, than any other state in the Union. The doctrine has been restated and reaffirmed since the decision of the Hastings case no less than seventeen times in as many different controversies, and in only one of these cases has the Hastings case ever been referred to, and that only parenthetically. The case of Hastings v. Foxworthy is reported in 34 L.R.A., 321, and an elaborate editorial note follows, and more than a hundred cases decided by more than a score of states are cited in support of the rule that the decision upon a former appeal is binding even though erroneous. The state of Illinois is included among those courts which have in some measure clouded the doctrine. That court is also in a peculiar situation. In the case *Page 739 
of Freet v. American Elect. Sup. Co., 257 Ill. 248,100 N.E. 933, that court declared that the rule laid down in a former review is not binding upon the court on a second review. The court did not in that case overrule, criticize, or attempt to distinguish the numerous cases which had theretofore been decided by it, in which the rule had been unequivocally declared, and, what is stranger still, in the case of Thomasson
v. City of Chicago, 261 Ill. 131, 103 N.E. 552, the rule was again applied in a case which had been consolidated with two other cases, only one of which had had a former review, and it was held that the rule in the former review in one case became the law of the case in all three cases thus consolidated.
The state of New York is included by certain text-writers among those that have beclouded the doctrine, but we are unable to find any justification for this view, because it is stated in the Matter of Laudy, 161 N.Y. 429, 55 N.E. 914, that a decision in a former appeal is conclusive upon the court in a subsequent review.
The state of Missouri is another state which has vacillated in the discussion of this doctrine. Many cases decided by that court can be found which uphold the doctrine, and other cases state that the rule is not a binding rule. The leading case of departure is perhaps that of Keele v. Atchison, Topeka SantaFe Ry. Co., 258 Mo., 62, 167 S.W. 433. That case being the last expression of the Missouri courts probably removes that state from the list of those which adhere to the doctrine. *Page 740 
The earliest federal case is Himely v. Rose, 9 U.S., (5 Cranch), 313, 3 L.Ed., 111, decided in 1809, the opinion having been delivered by Chief Justice Marshall. The report is very brief, but it does appear that there was a former review and reversal and an express mandate to the lower court. In the colloquy between court and counsel the Chief Justice said on page 314: "Nothing is before this court but what is subsequent to the mandate." The opening sentence of the opinion, on page 316, states:
"A decree having been formerly rendered in this cause, the court is now to determine whether that decree has been executed according to its true intent and meaning."
The entire opinion covering only two pages shows that that was the only question which the court considered.
In Stone v. Southern Ill. Mo. Bridge Co., 206 U.S. 267,27 S.Ct., 615, 51 L.Ed., 1057, no definite rule of law was declared, but a reading of the case discloses that there was a first and second appeal and that the Supreme Court only considered those matters which were not settled by the first appeal.
The doctrine has been followed by the Circuit Courts of Appeals in a large number of cases which we will not take the trouble to discuss. It is said, however, that the case ofSouthern Ry. Co. v. Clift, 260 U.S. 316, 43 S.Ct., 126,67 L.Ed., 283, is opposed to the doctrine. That case merely decided that:
"A decision of a state court disposing of a federal question by following its decision on *Page 741 
a former appeal as the law of the case, cannot be regarded as resting on the independent, non federal ground of resadjudicata."
We have no quarrel with that case, because it is well settled that the Supreme Court of the United States is not in any way bound by a decision of a state court where federal questions are involved. Mr. Justice McKenna delivered the opinion of the court and proceeded to declare the true distinction betweenres adjudicata and "the law of the case," and made the very pertinent, cogent statement that the law of the case directs discretion and that res adjudicata supersedes it and compels judgment; in other words, in one it is a question of power, in the other submission. It was but natural that the United States Supreme Court should refuse to submit to the judgment of a state court as a finality, in a case where a federal question was involved.
In Messenger v. Anderson, 225 U.S. 436, 32 S.Ct., 739,56 L.Ed., 1152, the doctrine of the law of the case was clearly recognized, but limited to a question of practice and not as a restraint upon power. This again was a case where the Supreme Court of the United States was reviewing a decision of a state court where a federal question was involved, and in the syllabus of the case the following is declared:
"In a conflict between, decisions of the state and federal courts, this court is free when the case comes here."
In the case of Zeckendorf v. Steinfeld, 225 U.S. 445,32 S.Ct., 728, 56 L.Ed., 1156, the Supreme Court of the United States for the third time *Page 742 
refused to apply the doctrine of the law of the case when it had on review a case which had been twice heard in the court of last resort of the territory of Arizona and then prosecuted to the Supreme Court of the United States upon a federal question. We have searched the opinions in all these cases in vain to find anything contrary to the general doctrine of the law of the case, and it is quite clear that those decisions only constitute one of the well-defined exceptions thereto.
Having carefully examined all the federal cases decided by the Supreme Court of the United States and the many decisions of the Circuit Courts of Appeals, it is believed that the foregoing are all of the cases which have declared any exception to the general rule that a declaration in a former appeal has binding force. The Supreme Court of the United States, beginning with the early case of Himely v. Rose, supra, has never departed from the general features of the rule farther than indicated by the few cases already discussed. In the case of Roberts v. Cooper, 20 How., 467, at page 481 (15 L.Ed., 969), the Supreme Court of the United States made the following ringing pronouncement:
"It has been settled by the decisions of this court, that after a case has been brought here and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined *Page 743 
upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first, would lead to endless litigation. In chancery, a bill of review is sometimes allowed on petition to the court; but there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its members. See Sizer v. Many, 16 How., 173; Corning v. Troy Iron Company, 15 How., 466; Himely]
v. Rose, 5 Cranch, 313; Canter v. The Ocean InsuranceCompany, 1 Pet., 511; The Santa Maria, 10 Wheaton, 431; Martin
v. Hunter, 1 Wheaton, 304; and Sibbald et al. v. United States, 12 Pet., 488.
"We can now notice, therefore, only such errors as are alleged to have occurred in the decisions of questions which were peculiar to the second trial."
That case and its citations were followed inSupervisors v. Kennicott, 94 U.S. 498, 24 L.Ed., 260, and the general doctrine has been affirmed and approved in the following cases: Thompson v. Maxwell Land Grant Ry. Co.,168 U.S. 451, 18 S. Ct., 121, 42 L.Ed., 539; Clark v. Keith,106 U.S. 464, 1 S.Ct., 568, 27 L.Ed., 302; Chaffin v. Taylor,116 U.S. 567, 6 S.Ct., 518, 29 L.Ed., 727. And in at least two cases in which no federal principle was violated the Supreme Court applied the rule that where there has been a second appeal in the state courts the United States Supreme Court would refuse to review the law declared in the first appeal:Northern Pac. Rd. *Page 744 Co. v. Ellis, 144 U.S. 458, 12 S.Ct., 724, 36 L.Ed., 504;Great Western Tel. Co. v. Burnham, 162 U.S. 339, 343,16 S.Ct., 850, 40 L. Ed., 991.
In obedience to the uniform and consistent decisions of the Supreme Court of the United States, the federal District Courts and Circuit Courts of Appeals have followed and applied the rule in a large number of reported cases.
It is even said that the Supreme Court of Ohio has not supported this doctrine in the past. We will therefore briefly review some of the Ohio decisions. One of the earliest cases in which this rule might have been applied is Aubrey v. Almy,4 Ohio St. 524. The failure of this court to apply the rule in that case does not detract in the least from the rule itself. The case originated as a forcible detainer suit before a justice of the peace. Judgment was there rendered for the plaintiff. The judgment was reversed in the court of common pleas and the cause retained for trial. Judgment was again rendered for the plaintiff for costs and restitution. Thereupon in the same case the plaintiff moved the court to impanel a jury to assess the value of rents and damages accruing to plaintiff after the notice to quit. The motion was overruled and error prosecuted to the Supreme Court, which reversed and awarded a writ of procedendo to proceed with the inquiry. A jury was accordingly impaneled and a verdict rendered for plaintiff, and error was again prosecuted from that judgment to the Supreme Court, and the Supreme Court held on the second review that by virtue of Sections 13 and 14 of the Act of 1831 (Swan's Statutes, old Ed., 419), regulating *Page 745 
proceedings in forcible detainer, no jurisdiction was conferred upon the court of common pleas to assess damages in any case except where the judgment of the justice of the peace isaffirmed. On page 529 of the opinion, Thurman, C.J., makes it clear that the court could not in its former review confer jurisdiction upon the court of common pleas which was not conferred upon that court by the statute relating thereto. It is universally agreed that if a court does not have jurisdiction of the subject-matter of an action, any judgment becomes a mere nullity. There is nothing in the case of Aubrey
v. Almy, 4 Ohio St. 524, which goes farther than to merely recognize that well-known principle.
In the case of Pollock v. Cohen, 32 Ohio St. 514, this court has clearly and unequivocally recognized and applied this doctrine, and has extended it not only to questions actually presented but to all questions existing on the record that might have been presented for adjudication on the first petition in error. The fourth syllabus reads as follows:
"Where a case is brought a second time, on the same record, by petition in error, all questions on such record will be deemed settled by the first adjudication. This rule extends not only to questions actually presented, but to all questions existing on the record that might have been presented for adjudication in the first petition in error. In such case the second petition in error should be dismissed."
The steps which had been taken in that case as a basis for the foregoing pronouncement were *Page 746 
not by any means parallel to the steps in the case at bar as heretofore outlined, but the principles which are decisive of that case have application to the case at bar. Whatever facts may have been the basis of that syllabus, the opinion of the court, which may properly be referred to in construing the syllabus, has left no doubt of its application to the instant case. On page 519 of the opinion we find:
"It is well settled by authority, and is a doctrine sound in principle, that all questions which existed on the record, and could have been considered on the first petition in error, must ever afterward be treated as settled by the first adjudication of the reviewing court.
"The time should come, in the history of a cause, when litigation must end. If the failing party was allowed to prosecute a new petition in error, on the same record, whenever he imagined he had discovered a new ground of error not previously assigned, litigation would be interminable. Such a practice would violate well-settled principles of law and be against public policy."
It is said, however, that the cases of Bane v. Wick, 6 Ohio St. 13, and Pennsylvania Co. v. Platt, 47 Ohio St. 366,25 N.E. 1028, are contrary to Pollock v. Cohen. In those cases it is declared in the syllabus that the law declared in a former review will be followed in a subsequent review "unless very clearly satisfied that it is erroneous."
If it be conclusively inferred from this very indefinite pronouncement that in all cases where the declaration of law on the first review is erroneous, it will be disregarded on the second *Page 747 
review, it must be conceded that very little would be left of the doctrine itself. It will be observed, however, that the case in the 6th Ohio State was decided many years before the pronouncement in the 32d Ohio State, and it will also be found that in the opinion of Williams, J., in the 47th Ohio State no reference whatever is made to the 32d Ohio State; nor is it distinguished, criticized, or in terms overruled. Manifestly, the doctrine would be utterly devoid of meaning if applied only when the decision upon the former appeal is sound. If the former decision is sound there is no occasion to invoke the rule, because any sound decision ought to be affirmed; no vitality or meaning can be given to this doctrine unless it is made to apply to an erroneous decision. We can only conclude therefore that in each of those cases the court did not carefully consider the effect of the language above quoted, and we think therefore it does not follow that the court would have made a different ruling if error had been found to exist in the former appeal. The court in each of those cases was only considering the record then before it in which the error was found.
It is further contended that the case of Russell, Adm'r., v.Fourth Natl. Bank, 102 Ohio St. 248, 131 N.E. 726, disapproves this doctrine. There is no declaration whatever in the syllabus of that case either nearly or remotely referring to the doctrine, and a careful reading of the opinion shows that it could have no application to the principle for which plaintiff in error contends in the instant case. At page 263 of the opinion (131 N.E. 731), it is stated: *Page 748 
"In the case we have here it must be remembered that there is a vital difference between the former and the last proceeding in the Court of Appeals."
It is further contended that the case of Columbus Packing Co.
v. State, ex rel. Schlesinger, prosecuting attorney, is in point, and that it disapproves the doctrine. That case is reported in 100 Ohio St. 285, 126 N.E. 291, 29 A. L. R., 1429, and again in 106 Ohio St. 469, 140 N.E. 376. It is true that in that case this court in its later judgment directly overruled some of the declarations of its former judgment, but it is also true, as shown by the opinion in the latter judgment, that after the cause was first heard by this court and remanded for further proceedings one of the defendants, "the creamery company, filed its amended answer, containing a new and distinct defense, which the trial court did not have before it for consideration, and the validity of which was not determined by it." The above-quoted matter appears in the opinion of Jones, J., at page 477 (140 N.E. 379).
The syllabus of the later judgment contains no discussion whatever of the doctrine of the law of the case, and manifestly that doctrine could have no direct application, because the hearing in the trial court after the first review was upon materially different issues. It was further stated in the opinion of Jones, J., at page 479, (140 N.E. 376), that there was a failure of proof upon the trial of the cause, and this matter could not have been determined in the first review because there had at that time been no trial of issues of fact.
The Ohio courts are therefore not out of harmony *Page 749 
with the courts of other states of the Union and the federal courts upon this doctrine.
Although we are affirming the doctrine of "the law of the case," when we come to apply the rule to the instant case and make a careful study of the second trial, it is found that the trial court did not give full effect to the mandate of the Court of Appeals upon the first review, and further that the mandate did not cover the entire case presented in the second trial. This situation is covered in 4 Corpus Juris, at page 1097, and many cases are there discussed from which the editor reaches the following conclusion:
"Where, after a definite determination, the court has remanded the cause for further action below, it will refuse to examine questions other than those arising subsequently to such determination and remand, or other than the propriety of the compliance with its mandate; and if the court below has proceeded in substantial conformity to the directions of the appellate court, its action will not be questioned on a second appeal. But if the mandate does not cover the entire case, but leaves something undetermined to be inquired into and adjudicated, or if the lower court misconstrues the decree of the appellate court and does not give full effect to its mandate, a new appeal is an appropriate remedy."
The weight of the authorities cited fully supports the conclusion stated. Applying the general rule to the instant case, in the light of those conditions and exceptions as above stated, we find no error in the judgment of the Court of Appeals reversing the second judgment and remanding the cause *Page 750 
for a third trial. It is manifestly desirable that it be tried by the application of correct principles of law, and that the damages existing, if any, be measured by a standard uniform rule which has been generally approved in the past and which may be employed as a precedent in future cases. In any event, in this particular case, the cause having been certified to this court for review and final determination, it is obligatory upon this court to declare the true rule which shall govern this case and all other cases grounded upon similar facts.
It is alleged as a ground of recovery in this case that the plaintiff erected improvements upon her property before a grade had been established, but that she exercised reasonable care and judgment in erecting buildings and making improvements with reasonable regard to a future grade to be thereafter established; that after said improvements had been constructed the city through its council adopted a grade which was unreasonable, resulting in damage.
It has been established by several decisions of this court that where improvements are erected by a property owner with reference to an established grade which was thereafter changed, damages may be recovered, and it is not disputed by counsel in this case, neither is it doubted by this court, that the same rule applies under the facts pleaded in this case. We will assume that the jury found the grade adopted by the city to be unreasonable, and we are therefore confronted only with the question of the measure of damages. The measure of damages has never been declared by any previous *Page 751 
decision of this court in any case involving a change of the grade of a street. In the case of Crawford v. Village ofDelaware, 7 Ohio St. 459, there is no discussion of the measure of damages, but there is a discussion, beginning at page 470 of the opinion, concerning the nature of a proceeding whereby a change of grade is adopted, and it is therein declared that property owners are entitled to compensation because the change is an invasion of a private right for the benefit of the public and therefore an appropriation of property. This being the theory upon which compensation is awarded in favor of the property owner and against the municipality, the same measure of damages must necessarily be applied as in any other exercise of the right of eminent domain. It has been the approved practice in Ohio for more than half a century, and it is also the approved practice in the courts of other states, to ascertain the difference between the market value of the property before the improvement and the market value of the property after the improvement, and that difference shall constitute the damages. The difficulty with the rule laid down by the Court of Appeals on the first review of this controversy is that there seems to be no distinction made between value and damages. It is manifest that if a reasonable grade should be established by the city, there could be no compensation adjudged in favor of the property owner, and it is therefore confusing to instruct the jury that they should ascertain the difference between damages flowing from a reasonable grade and the damages flowing from an unreasonable grade. The effect of that instruction is, therefore, *Page 752 
that the measure of damages is the actual damage suffered, which throws no light whatever upon the manner of ascertaining the damage. The jury should therefore be instructed that the measure of damages is the difference between the market value of the real estate with the improvements thereon, erected with reference to a reasonable grade thereafter to be established, and the market value of the real estate with the improvements thereon after the establishment of a grade by the municipality, provided the grade so established is found by the jury to be an unreasonable grade.
This is the rule which was very briefly laid down inColumbus, H. V. T. Ry. Co. v. Gardner, 45 Ohio St. 309, and it is stated on page 322 of the opinion (13 N.E. 69) that the rule is too well settled in this state to admit of further controversy. This rule was followed by counsel in the trial of the case in the insolvency court, in propounding questions to the witnesses, except that counsel was not always careful to confine the questions to market values.
It has already been observed that on the second trial of the case in the insolvency court the trial court did not give full effect to the mandate of the Court of Appeals, and that the mandate did not cover the entire case presented in the second trial. As a part of the instruction upon the measure of damages the trial court made the following statement:
"Different methods and differences in value have been given you, one method being for the erection of a retaining wall and the filling in of the lots and the raising of the buildings and the *Page 753 
raising of the foundations. Unreasonable expense cannot be allowed. If for instance you find a fill necessary and a retaining wall unnecessary, then the latter cannot be added to the cost of a proper fill. It is for you to determine from the evidence which is the most feasible and the most reasonable and economical and practicable way of treating the property to get at this question of damages, if you find she is entitled to any damages."
This instruction was a gross departure from the uniform rule of measuring the damages by ascertaining the value of the property before and after the improvement. Many cases hold that an inquiry may be made into the cost and expense of alterations and restorations, for the purpose of adjusting the property and its improvements to the new conditions created by the change of grade. This is, however, not for the purpose of ascertaining the extent of the property owner's damage. Its purpose is to ascertain whether the damages shown by decrease in market value can be minimized by resorting to alterations and adjustments. If, for example, property left after a street improvement in an unsightly condition should be estimated to be worth $1,000 less than before the improvement, and by the expenditure of $100 the property could be restored to its former value, the property owner would be made fully whole by the payment of $100, and the cost of alterations and adjustments should then become the measure of damages. A different rule prevails when the cost of alterations to suit the fancy of the owner, or to meet the different ideas of witnesses called to testify as experts on the subject of alterations, *Page 754 
shall exceed the amount of the difference in values of the property before and after the improvement. In the instant case, the same witnesses who had given testimony of values before and after the improvement were also interrogated as to the cost of making alterations, and in each instance the cost of alterations exceeded the difference in values as estimated by those witnesses. An examination of the record discloses that the testimony as to the amount of the difference in values was approximately $2,000, and that no witness set a greater difference than $2,000 except one whose testimony was that the difference would be between $2,000 and $2,500. The testimony on the subject of the cost of alterations ran very much higher. It is apparent that the verdict is responsive to the higher estimates upon the subject of alterations and adjustments. This portion of the charge is therefore clearly prejudicial. Such testimony, according to the authorities, is only competent when alterations could be made at a cost which would be less than the amount of the difference in values. City of Topeka v.Martineau, 42 Kan. 387, 22 P. 419, 5 L.R.A., 775; Smith v.Kansas City, 128 Mo., 23, 30 S.W. 314; Ziebarth v. Nye,42 Minn. 541, 44 N.W. 1027; Sallden v. City of Little Falls,102 Minn. 358, 113 N.W. 884, 13 L.R.A., (N.S.), 790, 120 Am. St. Rep., 635. Under such circumstances, it is not easy to see how it is competent in any event for the claimant to introduce evidence of the cost of alterations. This inquiry should only come on the part of the city, in the event that the general damages could be minimized by making alterations. For *Page 755 
these reasons the judgment of the Court of Appeals will be affirmed.
Judgment affirmed.
ROBINSON, ALLEN, and CONN, JJ., concur.
JONES, MATTHIAS, and DAY, JJ., concur in propositions 4, 5, and 6 of the syllabus, and in the judgment, but dissent from propositions 1, 2, and 3 of the syllabus.