GREEN, APPELLEE, *v.* ACACIA MUTUAL LIFE INS. CO., APPELLANT. (TWO CASES.)

(Nos. 7857 and 7858—Decided May 24, 1954.)

*Mr. Walter K. Sibbald,* for appellee.
*Messrs. Marble & Vordenberg,* for appellant.

MATTHEWS, P. J. These two appeals are from judgments rendered in favor of the same beneficiary in two insurance policies, identical in terms, upon the life of George C. Green. Each judgment is for $2,500 and interest, the full amount for which the plaintiff prayed. The defendant has appealed from each judgment, and the plaintiff has filed a notice of cross-appeal in each appeal. These judgments were entered on verdicts returned at a second trial. At the first trial the jury returned verdicts, which, upon defendant's motions, were set aside, and new trials granted on the grounds of newly discovered evidence and that the verdicts were manifestly against the weight of the evidence. The plaintiff attempted to appeal from the granting of new trials, and the defendant cross-appealed from the orders overruling its motions for instructed verdicts and for judgments notwithstanding the verdicts. This court found that the trial court did not abuse its

discretion in granting the new trials and, therefore, dismissed the appeals because the orders appealed from were not reviewable by the court, and finding that the record contained no prejudicial error as to the defendant, therefore, dismissed the cross-appeal. *Green* v. *Acacia Mutual Life Ins. Co.*, 88 Ohio App., 67, 94 N. E. (2d), 649. Finding our judgment in conflict with that rendered in *Haffner* v. *Schmeidl*, 87 Ohio App., 143, 90 N. E. (2d), 700, we certified the cause to the Supreme Court for final determination. That court affirmed the judgment of this court in holding that the granting of a motion for a new trial was not reviewable in the absence of an abuse of discretion. Of course the cross-appeal was not and could not have been certified, and no appeal was taken from that judgment. Therefore, the Supreme Court did not pass on any issues raised by the cross-appeal. See *Green* v. *Acacia Mutual Life Ins. Co.*, 156 Ohio St., 1, 100 N. E. (2d), 211.

The present appeals are from the judgments rendered in favor of the plaintiff. The plaintiff, by her cross-appeals, does not seek to set aside the judgments in her favor, but does seek to have the court determine whether the court should have sustained her motions for a directed verdict. In view of the fact that judgments were rendered in her favor for the full amount of her claims, it would seem that a sufficient answer to this cross-appeal would be that even if the court erred, no possible prejudice resulted to the plaintiff by reason thereof.

Furthermore, this cross-appeal could serve no greater purpose than an assignment of errors by an appellee under favor of Section 12223-21a, General Code (Section 2505.22, Revised Code), which would be considered only after the court had concluded to reverse the judgment, and if the court should have done just

what in fact it did do, there would be no possibility of the court reaching any such conclusion. See *Greenberg* v. *L. 1. Snodgrass Co.*, 95 Ohio App., 307, 119 N. E. (2d), 114; affirmed 161 Ohio St., 351, 119 N. E. (2d), 292.

The basis of the plaintiff's claim that judgment should have been rendered in her favor is that for the reason, hereinafter considered, there was no competent evidence of fraud introduced at the second trial and that defendant was precluded from relying on the defense of lack of sound health because of the dismissal of its prior cross-appeal. The record shows that at the first trial, the court refused to submit the issue of sound health to the jury, and such refusal was one of the assignments of error in the defendant's cross-appeal. It is claimed that this court, by finding that there was no error prejudicial to the insurer, and dismissing its cross-appeal, established the law of this case in view of the fact that the evidence was substantially the same at the second trial as at the first. Assuming, but not deciding, that such is the state of the record, we do not think the authorities justify the plaintiff's conclusion. They seem to require the conclusion that in the absolute sense, there is no "law of the case" in Ohio.

We think the result of the Ohio cases is fairly stated in 4 Ohio Jurisprudence (2d), 527, Section 1173, as follows:

"In stating and marking out the boundaries of the law of the case doctrine, the courts have not held that a prior determination is absolutely binding upon a court under all circumstances, as it has been stated that the doctrine is not approved 'as a rule of binding force, but as a salutary rule of practice, which should be applied in all cases where it may be employed as a shield against endless litigation, and to compel obedi-

ence of trial courts to the mandates of reviewing courts, and not as a sword which may be employed as an instrument of oppression and injustice.' "

We conclude, therefore, that the review on this appeal is not restricted by any predetermination of any issue or any pronouncement of the applicable law on the prior appeal in this case.

As already mentioned, one of the grounds for granting a new trial was that the first verdict was manifestly against the weight of the evidence. That was not assigned as a ground in the motions to set aside the second verdict and for a new trial. It is one of the defendant's assignments of error on this appeal. This situation presents the question of whether we can consider this assignment of error in view of the fact that the trial court had already granted one new trial on that ground and was prohibited by Section 11577, General Code (Section 2321.18, Revised Code), from granting a second new trial on that ground.

In *Snow* v. *Cincinnati Street Ry. Co.*, 80 Ohio App., 369, 75 N. E. (2d), 220, we held that where the trial court had granted one new trial on the weight of the evidence and had overruled a second motion for a new trial on that ground made by the same party in the same case, we had no power to weigh the evidence introduced at the second trial.

But, it is urged that a motion for a new trial is no longer necessary to raise the question of the weight of the evidence on an appeal, and that this changes the rule announced before that change was made. We do not think so. The fact that prevents this court from weighing the evidence and reversing the judgment, if we concluded that judgment is manifestly against the weight of the evidence, is that no error on that subject appears in the record of the second trial. In failing or refusing to weigh the evidence at the second trial, the court followed the mandate of the statute. To hold

that such action was error could only result from a confusion of opposites.

We now turn to a consideration of the record of the second trial. This record shows that in October 1947, George C. Green applied for a policy upon his life. He was examined by the defendant's physician and signed the questionnaire prepared by the physician. As a result of the physician's examination, it was discovered that Green had a systolic blood pressure of 170 and a diastolic of 85, which was an abnormal condition, resulting from the presence of one or more specific diseases not identified by that symptom alone. It was also disclosed in the application that he had been the subject of a cholecystectomy and an appendectomy.

As a result of these disclosures, particularly of the blood pressure, the defendant refused to insure the applicant as a standard risk, but agreed to and did issue these policies to him as a substandard risk. The difference between a standard risk and a substandard risk is that, because of the increased risk involved in the substandard risk, a higher premium rate is charged, which was done in this case.

In the application for this insurance, it was stipulated that there should be no contract of insurance until the policy was delivered—"all during the proposed insured's life and continuance in good health." It is urged that as there is evidence (which defendant asserts is conclusive) the insured was not in good health, the condition on which the insurance was to become operative did not exist, and, therefore, there was never any insurance and the extent of the defendant's liability was to return the premium, which it had done by tendering it and paying it to the clerk of the court.

On the other hand, attention is called by plaintiff to the undisputed fact that the defendant knew of symptoms indicating lack of good health and declined to is-

sue a policy except upon the payment of a larger premium than would be required from an insured in good health. Attention is also called to the terms of the receipt for the premium indicating that the ''good health'' provision applied only when the insured was accepted as a ''standard risk,'' which was not done in this case.

The phrase, ''sound health,'' has a relative meaning. It cannot be construed to mean freedom from every conceivable ailment, no matter how trivial. To construe it to mean perfect health, were we to so construe it, would, we venture to say, invalidate most insurance policies. It must be given a reasonable construction under the circumstances. It certainly cannot be construed to include those ailments of which the insurer had actual knowledge, or those ailments, symptoms of which are known and appreciated, and because of the presence of which the insured is classified as a substandard risk and a higher premium is paid.

In this situation, it could not be said as a matter of law that the condition requiring that the insured should be in good health at the time of delivery of the policy had not been fulfilled. Whether this results from an interpretation of ''good health'' to exclude known ailments and symptoms, or by the application of the principle of waiver or estoppel is immaterial. The result is that the circumstances presented an issue of fact.

The defendant contends also that the insured made many false answers to questions contained in the application for insurance and that, as it is undisputed that many of these answers were false, no issue of fact on that subject was presented. It is not claimed that the insured wrote these answers himself. They were written by the medical examiner and there is evidence that the insured signed the application without reading it. There is evidence that the medical examiner

did not inquire of the insured before writing in the answers to the questions. By signing the application, the insured became bound by the answers, but mere falsity of the answers is not sufficient to invalidate the policy. A similar situation was presented in *Willig* v. *Prudential Ins. Co.*, 71 Ohio App., 255, 49 N. E. (2d), 421, and we held, as stated in the fourth paragraph of the syllabus:

"Although bound by such answers, the beneficiary is not precluded from recovering on the policy unless 'it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer' as provided in Section 9391, General Code."

We are of the opinion that the foregoing is a correct construction of Section 9391, General Code (Section 3911.06, Revised Code), and as the evidence is conflicting as to whether insured wilfully and fraudulently made false statements that also presented an issue of fact.

We, therefore, conclude that the court did not err in overruling the motions of the parties for instructed verdicts.

We come now to a consideration of the record to determine whether any error was committed in the manner of the submission of the issues to the jury.

The court gave nine special charges in writing and refused to give six. It is urged that the court erred to the defendant's prejudice in giving some and in refusing others, and also in its general charge.

As to the one special charge given at the plaintiff's request, it seems to the court that it is no more than an application of the terms of Section 9391, General Code, to the evidence in the case. We find no prej-

udicial error in it. By its terms, it applied only to the issue of fraud. It had no relation to the provision requiring "good health" at the time of the delivery of the policy.

. Counsel relies on *Sambles* v. *Metropolitan Life Ins. Co.*, 158 Ohio St., 233, 108 N. E. (2d), 321, in support of his contention that the court should have instructed a verdict for defendant and should have refused to give the special charge requested by plaintiff. We think the case is entirely dissimilar. It did not involve a substandard risk and no agent of the insurer had anything to do with the false answers to the questions in the application.

Next, it is urged that the court erred in refusing to give this special charge:

"The court instructs the jury that the pleadings permitted by the laws of Ohio are a petition, an answer and a reply; that the allegations of the pleadings are not evidence, and that as defendant is not permitted to file a pleading admitting or denying new matter set up in plaintiff's reply, such new matter is deemed in law to be denied."

It will be observed that this special charge did not relate to any issue to be submitted to the jury. Rather, it was a statement as to the manner in which those issues were joined. We are of the opinion that it falls within the class of general instructions resting in the sound discretion of the court to give or refuse. See *Estridge, Admx.*, v. *Cincinnati Street Ry. Co.*, 76 Ohio App., 220, 226, 63 N. E. (2d), 823, where will be found a quotation from Ruling Case Law on the subject. Furthermore, most, if not all of the affirmative allegations of the reply were admitted at the trial and the other special charges, given at defendant's request, clearly indicated to the jury that in issuing the policy it relied on both a violation of the "good health" provision and false and fraudulent answers in the appli-

cation. No possible prejudice could have resulted to the defendant by the refusal of the court to give this special charge.

It should be noted also that the charge states broadly that the allegations of pleadings are not evidence, whereas, allegations of pleadings are always available to the adverse party as admissions.

Next, it is claimed error intervened in refusing to give this charge:

"The court instructs the jury that a specific question in the application for a policy of life insurance as to any matter indicates that the insurance company deems it material to the risk and is entitled to a true answer."

This charge is an abstract statement and error cannot be predicated upon the refusal of the court to give it. *Hutchins* v. *Cleveland Mutual Ins. Co.*, 11 Ohio St., 477, did not involve the refusal to give a special charge.

Next, the court refused to give this charge:

"The court instructs the jury that an answer to a question in the application for a policy of life insurance which is material and but for which the defendant insurance company would not have issued the policy and which answer was falsely made and known to be false, shall be presumed to have been made wilfully and with intent to deceive."

This charge entirely disregards the circumstances under which the application was prepared.

Counsel rely on *Sambles* v. *Metropolitan Life Ins. Co., supra,* and *Willig* v. *Prudential Ins. Co., supra,* as authorities supporting the validity of this charge. The applications in those cases were prepared under entirely different circumstances. In the former case, there was no dispute that the insured had answered the questions concerning his health as they were written in the application, and that the answers were his free and voluntary act. And "there was no evidence

that any representative of defendant knew that the insured had had any trouble with his health or had consulted any doctor." The authorship of the answers was the subject of conflicting testimony in the case at bar. An abstract statement that any false answer in an application made by any person knowing it to be false would be presumed to have been made with intent to deceive certainly would have been of no help to a jury in deciding the issue in this case and in fact would have been misleading.

In the *Willig case* the verdict was for the defendant. The insured complained because the court gave the charge. The giving or refusal to give an abstract statement of law is not regarded as prejudicial error, even when it is a correct statement. This rule was mentioned in the *Willig case* in connection with another special charge and it was not deemed necessary to repeat it.

The refusal to give other special charges is assigned as error. Without extending this opinion further, we think it sufficient to say that we find no prejudicial error in the action of the court.

It is urged that the court failed to state clearly the issues in the case. We have examined the general charge in the light of this claim. It seems to us that the court properly set forth the two issues with reasonable clarity and correctly defined the burden and degree of proof. It seems that the court did not in express terms state that the verdict turned on the finding upon these issues, but this could be regarded only as an omission, and no request was made for a further charge on the subject.

We find no prejudicial error in the record.

For these reasons, the judgments are affirmed.

*Judgments affirmed.*

Ross and HILDEBRANT, JJ., concur.