Ross, Appellant, *v.* The Cincinnati Transit Co., Appellee.

(No. 8252—Decided October 28, 1957.)

*Mr. Harry Kasfir, Mr. Morton Rosenbaum* and *Messrs. Weiland, Solinger & D'Angelo,* for appellant.
*Messrs. Brumleve, DeCamp & Wood,* for appellee.

Matthews, J.   The defendant was a common carrier of passengers in and over the public streets of the city of Cincinnati, Ohio, and the defendant was a passenger for hire in one of its motor buses.   She boarded the bus near the Courthouse, with the intention of being transported to the General Hospital, located on Burnet Avenue, an undisclosed distance away.   There existed a loading platform in Burnet Avenue in front of the General Hospital, and this was a regular stopping place for taking on and letting off passengers.   At the south end of the platform a stop sign was displayed which indicated to the

operator of vehicles, including buses, that all vehicles should be brought to a stop at the platform. To the east of the platform were rails, and, apparently, electric trolley wires overhead.

The motor bus upon which the plaintiff was a passenger approached the loading platform at a speed variously estimated at from 10 to 15 miles per hour, and it was the operator's intention to stop, in compliance with the stop sign and the signal of plaintiff and other passengers of their intention to alight. There was no intervening traffic or other obstruction when the motor bus reached a point not more than 40 feet from the south end of the loading platform, and, according to all witnesses, the operator of the motor bus was regulating its speed so as to stop at the regular stopping place alongside the loading platform. Whether the rate of speed at that precise moment was uniform, or whether the operator allowed the speed to be increased at one point is in dispute, but no witness. testified that the speed was increased after he became aware of anything that would prevent the carrying out of his intention to have the motor bus come to a stop at the usual stopping place alongside the loading platform in the normal manner.

It so happened that, while the motor bus was in this position, a trolley bus was passing, going in the opposite direction, and had reached a point alongside the motor bus at that time. When the motor bus and the trolley bus were in that position, a cab suddenly, and without warning, emerged from behind the trolley bus directly into the path of the motor bus, and between it and the south end of the loading platform, thereby reducing the operator's assured clear distance ahead by one-half. The operator of the motor bus testified that he had no knowledge of the presence of the cab until its emergence from behind the trolley bus directly into his path, and that he immediately applied the brake with great force so as to avoid hitting the cab, and he succeeded in that respect. The evidence leaves no doubt that in all probability, had he not done so, there would have been a collision.

The plaintiff was thrown to the floor of the motor bus by the jerk caused by the sudden stopping of the motor bus. She sued The Cincinnati Transit Company and the operator of the taxicab to recover damages for her injuries, but during the

pendency of the action settled with the operator of the taxicab for $5,000, reserving her right against The Cincinnati Transit Company.

The action came on for trial to a jury on an amended petition and the answer thereto. On the evidence, which we have summarized, the court sustained defendant's motion for an instructed verdict, entered a judgment for the defendant, and overruled the plaintiff's motion for a new trial. That is the judgment from which this appeal was taken.

It is manifest that plaintiff's counsel and the trial court did not agree as to the effect of the evidence. The trial court concluded that the evidence showed the sole cause of the plaintiff's injuries was the negligence of the operator of the taxicab, and that the operator of the motor bus was confronted with a sudden emergency, and that there was no evidence from which it could be inferred that he was negligent in any degree. In this conclusion, we agree with the trial court. To hold otherwise would be unreasonable and fanciful.

The rule to be applied to the conduct of persons confronted with a sudden emergency is not in dispute. It is stated in 29 Ohio Jurisprudence, 568, Section 109, as follows: "He is not held to nicety and delicacy of judgment. He may have pursued the wrong course, determined after the end of the misfortune. His conduct is not to be viewed by looking backward in order to determine the question whether he exercised ordinary care, but by looking forward, when the circumstances were unforeseen and the result unknown."

But it is argued that this court is prevented from considering this question by the application of the doctrine of "the law of the case." This is predicated on the judgment and opinion in the prior appeal in this case.

The original petition in this case named both Taxicabs of Cincinnati, Inc., and The Cincinnati Transit Company as defendants, but a reading of that pleading creates the impression that there was very grave doubt as to whether it stated a cause of action against The Cincinnati Transit Company. At any rate, The Cincinnati Transit Company demurred on the ground that the petition did not state facts sufficient to constitute a cause of action against it. This demurrer was not

passed upon by the court. Shortly after the filing of this demurrer, Taxicabs of Cincinnati, Inc., made a settlement of its liability with the plaintiff and it was dismissed from the action. Some months thereafter the plaintiff filed an amended petition against The Cincinnati Transit Company alone.

The Cincinnati Transit Company demurred to this amended petition. On consideration, the court sustained the demurrer, and, the plaintiff not desiring to plead further, the action was dismissed. The plaintiff appealed from that dismissal, and it is the claim of the plaintiff that the judgment and opinion of this court on that appeal declare the law to govern this case, and that the trial court did not apply the law so declared.

We think counsel is under a misapprehension both as to the effect of what was decided on the first appeal in this case, and also as to the extent to which a judgment and opinion on an appeal in a case control the course of a subsequent trial and appeal in the same case.

It is true that in *Gohman* v. *City of St. Bernard,* 111 Ohio St., 726, 146 N. E., 291, 41 A. L. R., 1057, the Supreme Court held a definite determination of the Court of Appeals was binding upon the trial court, to which the case had been remanded for further action, and that upon a subsequent appeal to the Court of Appeals the correction of the decision on the prior appeal should not be questioned even though the Court of Appeals should be of the opinion that its former determination was erroneous. Three judges dissented. But, in *New York Life Ins. Co.* v. *Hosbrook,* 130 Ohio St., 101, 196 N. E., 888, 118 A. L. R., 1283, it is held, as stated in the second paragraph of the syllabus:

"The procedural doctrine announced in *Gohman* v. *City of St. Bernard,* 111 Ohio St., 726, is not consonant with the principles of judicial procedure upheld by the Supreme Court of this state. The claim that an inferior court can forestall review by our state Supreme Court rests upon a doctrine which is repugnant not only to our established judicial system but also to Section 2, Article IV, Constitution of Ohio, which confers on the Supreme Court express authority to 'review, and affirm, modify or reverse the judgment of the Court of Appeals.' (The first

and second propositions of the syllabus in *Gohman* v. *City of St. Bernard, supra,* overruled.)''

And *New York Life Ins. Co.* v. *Hosbrook* is still the law of Ohio.

This court had this doctrine under consideration in the case of *Green* v. *Acacia Mutual Life Ins. Co.,* 98 Ohio App., 101, 128 N. E. (2d), 222, and reached the conclusion that: ''In the absolute sense there is no 'law of the case' in Ohio.'' The cases dealing with this doctrine are fully considered in 4 Ohio Jurisprudence (2d), 522 *et seq.,* Section 1170 *et seq.*

So we conclude that no matter what the decision might have been in the prior appeal, it in no way should limit our consideration of the merits of this case on this appeal. But assuming that the doctrine would require us to consider ourselves bound by our prior determination in a proper case, is this such a case? Admittedly, the binding quality of the prior decision is limited to what was actually decided, and the language of the opinion must be read in that light.

The first appeal was from a judgment rendered sustaining a general demurrer to this amended petition. From the opinion (*Ross* v. *Cincinnati Transit Co.,* 101 Ohio App., 81, 82, 136 N. E. (2d), 760), this statement is taken: ''A reading of the amended petition is conclusive that such pleadings do constitute statements of valid causes of action. *This is not denied by the defendant.*'' In view of the allegations, the defendant could do no less in view of the averment that ''the driver stopped the bus and then he carelessly and negligently started the bus again at great speed and immediately brought it to a sudden stop. The action of the driver of the bus in stopping the same and then starting it, and then suddenly stopping it a second time caused the bus to jerk. Said jerk was so unusual, sudden and violent that this plaintiff was thrown forward to the front of the bus.''

The question naturally suggests itself as to the ground upon which the defendant sought an affirmance of this judgment on the first appeal. This resulted, as we found, from the erroneous application of another doctrine, to wit, that a general demurrer searches the record and requires judgment to be rendered against the first party whose pleading is defective in substance (31 Ohio Jurisprudence, 670, Section 108), and the legal

effect of an amended pleading upon the status of the original pleading. The opinion of the court is devoted exclusively to those two subjects.

On this second appeal, we are not required to consider whether the amended petition states a cause of action. We decided that on the first appeal, although it was not disputed except by the argument that the allegations of the original petition should also be considered and, being considered, they showed the plaintiff had no cause of action.

On this appeal, we have before us a judgment rendered after trial and are required to decide whether the allegations of the amended petition have been proven. That is an entirely different question, which was not and could not have been presented on the first appeal.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., and LONG, J., concur.