OPINION
Plaintiffs Harold R. Moore, Jr. and Debra Moore appeal the May 3, 2000 Judgment Entry of the Muskingum County Court of Common Pleas which scheduled the case for a new trial on the issue of damages. Defendants Betty W. Daw, Sharon Lothes and the Estate of Elizabeth Williams also appeal the trial court's May 3, 2000 Judgment Entry , in addition to the trial court's May 1, 1995 Judgment Entry, which denied their motion to dismiss the plaintiffs' third amended complaint; the trial court's May 1, 1998 Judgment Entry, which denied their complaint for declaratory judgment and damages; and the trial court's March 16, 2000 Judgment Entry, which, upon remand from this Court, gave plaintiffs the option to accept the remittitur or to proceed to a new trial on compensatory damages only. Because of the number of parties and the complexity of the procedural history, we will hereinafter refer to the various parties by name.
 STATEMENT OF THE CASE AND FACTS
In January of 1991, Harold and Debra Moore entered into a purchase agreement to purchase real estate located at 1860 Newark Road, Zanesville, from defendants the Estate of Elizabeth Williams, Sharon Lothes, and Betty Daw (sellers). Both Harold Moore and Betty Daw were real estate agents working for Baker Real Estate Agency. Ms. Daw listed the house for sale. Harold Moore represented himself and his wife (purchasers) in the transaction. Mr. Moore and Ms. Daw negotiated the purchase agreement for the property. Pursuant to Paragraph 8 of the Real Estate Purchase Contract, the sellers were obligated to furnish the Moores with an inspection by a licensed exterminator, stating the property was free of infestation or damage caused by wood destroying insects. The sellers obtained an inspection from Professional Pest Control Associates. The night before closing, Betty Daw telephoned the Moores to orally report the results of the inspection. Daw told Moore the report revealed evidence of prior termite treatment, but discovered no termites. Moore testified Daw stated "all was clear," but Daw was unable to recall the exact words she used. The Moores did not request a written report and the sellers did not furnish a written report before the February 1, 1992 closing. The Moores never occupied the house. Several days following the closing, the Moores had a contractor, Dana Johnson, prepare the house for renovations. When Mr. Johnson cut through an existing wall of the house, he discovered massive structural damage and a live termite infestation. The infestation was so extensive the house had to be demolished. In discovery, the Moores learned the home had been inspected on at least twelve occasions since 1984, and treated for termites at least four times. This information was not related by Betty Daw to the Moores on the night before the closing. Thereafter, the Moores brought this action against Daw, Lothes, and the Estate of Williams for breach of contract, fraud, and negligence. The Moore's complaint and amended complaint named a number of other defendants who are not at issue in this appeal. In November of 1994, appellants filed a third amended complaint joining Professional Pest Control's other co-owners, Elaine Bauserman and Earl Smith. In June of 1995, Professional Pest Control filed a Motion for Summary Judgment. The trial court granted the motion. Thereafter, plaintiffs appealed the trial court's decision to this Court. In an August 20, 1996 Opinion, this Court overruled plaintiffs' appeal and affirmed the July 24, 1995 Judgment Entry of the trial court granting summary judgment to Bauserman and Smith. On October 9, 1996, plaintiffs filed a Notice of Appeal to the Ohio Supreme Court. On January 15, 1997, the Supreme Court declined jurisdiction. Moore v. Daw (1999),87 Ohio St.3d 1418. After another year of pretrial activity, the trial court set a jury trial for March 2, 1998. The matter proceeded to trial on the Moores' breach of contract and fraud claims. At the end of plaintiffs' case-in-chief, each defendant moved for a directed verdict on the fraud claims premised on the doctrine of law of the case from this Court's August 20, 1996 Opinion. The trial court granted this motion and dismissed the fraud claims. The trial court denied defendants' motion for a directed verdict on the breach of contract claims. At the close of all evidence, the defendant again moved for directed verdict on the contract claim. The trial court overruled this motion. On March 13, 1998, the trial court read its written jury charge on the remaining breach of contract claim stating as follows: Plaintiffs must [prove] to you by the greater weight of the evidence that the parties entered into a contract for the sale of a house located at 1860 Newark Road, Zanesville, Ohio; that Defendants broke the contract by failing to fulfill the obligations in paragraph 8 of the contract which has been admitted into evidence as Exhibit A; and that this caused plaintiffs to suffer damages.
T. at 2303.
After deliberation, the jury returned with a verdict in favor of plaintiffs in the amount of $535,920. The jury also returned five interrogatories. In Jury Interrogatory No. 1, the jury stated it found defendants had breached the contract. In Jury Interrogatory No. 2, the jury stated the manner of the breach was "[f]ailure to disclose knowledge of previous termite damage." In response to Jury Interrogatory No. 5, which requested an itemization of the damages, the jury set forth: TYPES AMOUNTS Cost of house $110,000 Attorney fees 250,000 Demolition haul (dirt) 10,000 Remodeling completed 22, 000 Insurance loss 30,000 Rent 10,000 Heating system 2,000 Alarm system 400 Phone 380 Heat 760 Electric 380 Mental Anguish 100,000
Total $535,920
The trial court allowed the parties fourteen days to file briefs on the responses to the jury interrogatories. The trial court also provided the parties fourteen days to file briefs and proposed findings of fact and conclusions of law as to the bifurcated counterclaims. On March 27, 1998, the defendants filed a Motion for Remittitur to reduce the verdict by $383,520. On the same day, defendants filed a Motion for Judgment Notwithstanding the Verdict, or, in the alternative, a Motion for a New Trial with respect to the breach of contract claim. In a May 1, 1998 Judgment Entry, the trial court denied defendants' motions for judgment notwithstanding the verdict, and for a new trial, and granted defendants' motion for remittitur. Accordingly, the trial court awarded judgment against the defendants in the amount of $155,920 with interest at 10% per annum from May 1, 1998. Plaintiffs filed a notice of appeal from the May 1, 1998 Judgment Entry, and defendants filed a notice of cross-appeal. In a May 5, 1999 Opinion, this Court dismissed the appeal and cross-appeal, finding the May 1, 1998 Judgment Entry was not a final appealable order because the trial court did not offer the prevailing party a choice between accepting the remittitur amount or proceeding to a new trial. On remand, the trial court offered plaintiffs the opportunity to reject the remittitur and instead proceed with a new trial. In its May 3, 2000 Judgment Entry, the trial court indicated plaintiffs rejected the court's option to accept the remittitur of $155,920. Accordingly, the May 3, 2000 Judgment Entry set a jury trial on compensatory damages only for August 22, 2000. On May 22, 2000, defendants filed a Joint Notice of Appeal from the May 3, 2000; March 16, 2000; May 1, 1998; and the May 1, 1995 Judgment Entries. Defendants' appeal was assigned appellate case no. CT-2000-0014. On June 2, 2000, plaintiffs filed a Notice of Appeal from the May 3, 2000 Judgment Entry. This case was assigned appellate case no. CT-2000-0017. In a September 18, 2000 Judgment Entry, this Court consolidated CT-2000-0014 and CT-2000-0017. The judgment entry specified the time limitations established under Case No. CT-2000-0017 would control. Each party appeals the trial court's Judgment Entries, as noted, supra. Betty Daw assigns the following errors:
 I. THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT (Trial Transcript pp. 1898, 2242-2243; May 1, 1998 Judgment Entry)
 II. THE TRIAL COURT ERRED IN LIMITING A NEW TRIAL TO THE SINGLE ISSUE OF DAMAGES, THEREBY PRECLUDING CONSIDERATION OF THE ISSUE OF DEFENDANT'S ALLEGED BREACH OF CONTRACT. (May 3, 2000 Judgment Entry)
Sharon Lothes and the Estate of Elizabeth M. Williams assign the following as error:
 I. THE TRIAL COURT ERRED IN FAILING TO GRANT JUDGMENT IN FAVOR OF LOTHES AND THE ESTATE AS A MATTER OF LAW WITH RESPECT TO PLAINTIFFS' BREACH OF CONTRACT CLAIM AGAINST LOTHES AND THE ESTATE. (Trial Transcript p. 1898, 2242-2243; May 1, 1998 Judgment Entry)
 II. THE TRIAL COURT ERRED IN RULING, UPON APPELLEES REFUSING TO ACCEPT A REMITTITUR OF $155,920.00, THAT THE NEW TRIAL WOULD BE AS TO COMPENSATORY DAMAGES ONLY (Journal Entry, May 3, 2000; May 1, 1998 Judgment Entry)
 III. THE TRIAL COURT ERRED IN HOLDING THAT APPELLEE HAROLD R. MOORE, JR. (A) WAS A REAL ESTATE AGENT REPRESENTING HIMSELF AND HIS SPOUSE AND REFUSING TO DECLARE THAT HE, AS A REAL ESTATE AGENT ASSOCIATED WITH THE LISTING BROKER, WAS AN AGENT FOR THE SELLERS OF THE REAL PROPERTY (APPELLANTS) AND (B) WAS NOT ENGAGED IN AN UNLAWFUL DUAL AGENCY. (Judgment Entry, May 1, 1998)
Harold R. Moore, Jr. and Debra S. Moore assign the following error:
 THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING A NEW TRIAL TO REDETERMINE THE COMPENSATORY DAMAGES TO WHICH PLAINTIFFS ARE ENTITLED.
After filing their original brief (in case no. 2000-CT-0017, before the cases were consolidated), the Moores filed a document entitled "Common Brief of Appellees (Appellants) Moore Augmenting Brief of 8-29-00 and Reply Brief to Briefs of Appellants (Appellees) Daw, et al." This brief assigned five additional errors as follows:
 I. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST PLAINTIFFS' ON THEIR CLAIM IN FRAUD, AND IN FAVOR OF THE DEFENDANTS. The Trial Judge's ruling appears in the record in the Judgment Entry of May 1, 1998, see: EXHIBIT 3, and its Journal Entry of March 12, 1998, see: EXHIBIT 5.
 II. THE TRIAL COURT ERRED IN RULING THAT ". . . PLAINTIFFS' REQUEST FOR PRE-JUDGMENT INTEREST IS CONSIDERED AND DENIED AS PRE-JUDGMENT INTEREST CANNOT BE AWARDED FOR BREACH OF CONTRACT. R.C. 1343.031. . . ". The Trial Judge's ruling appears in the record in its Judgment Entry of 1fay 1, 1998, see: EXHIBIT 3.
 III. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY IN REGARD TO THE APPROPRIATENESS OF AN AWARD OF PUNITIVE DAMAGES IN A BREACH OF CONTRACT CASE. The Trial Judge's ruling appears in the record at TRIAL TRANSCRIPT Page 2238.
 IV. THE TRIAL COURT ERRED IN PROHIBITING PLAINTIFFS MOORE FROM PRESENTING THE TESTIMONY OF DEBRA MOORE'S TREATING PHYSICIAN UPON THE HOLDING THAT DAMAGES FOR PERSONAL INJURIES ARE NOT RECOVERABLE IN A FRAUD ACTION OR A BREACH OF CONTRACT ACTION. The Trial Judge's ruling appears in the record in the Journal Entry of March 11, 1998, see: EXHIBIT 6.
 V. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES. The Trial Judge's ruling appears in the record in the Journal Entry of May 22, 1998, see: EXHIBIT 7.
 I
Ms. Lothes and the Estate of Ms. Williams first contend the trial court erred in failing to grant judgment in their favor as a matter of law with respect to the breach of contract claims against them. These parties maintain they did not breach the purchase agreement; the Moores waived their contractual right to receive any termite report; and the doctrine of caveat emptor would preclude the Moores recovery for any defect in the real estate. Ms. Daw first assigns error in the trial court's failure to grant her motion for judgment notwithstanding the verdict. Ms. Daw maintains the purchasers performed the contract and further argues the Moores waived any breach. Further, Ms. Daw maintains the jury's response to the interrogatory was insufficient as a basis for a judgment on the breach of contract claim. We address these assignments of error together. Civ.R. 50(A)(4) establishes the procedure for a court to follow in granting a directed verdict: When a motion for a directed verdict has properly been made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon a determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
"[I]f all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party." O'Day v. Webb (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896,899-900. If there is substantial competent evidence to support the party against whom a motion for directed verdict is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119. "A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." Id., quoting O'Day at 219. A court cannot weigh the evidence or evaluate the credibility of the witnesses in determining such a motion. Wagner at 119. The standard of review for a Civ.R. 50(B) motion for judgment notwithstanding the verdict is the same as that for a motion for a directed verdict. Posin v. ABC Motor Court Hotel (1976),45 Ohio St.2d 271. The question presented is one of law, and, therefore, review of the motion does not entail a weighing of the evidence or an assessment of the credibility of the witnesses. Osler v. Lorain (1986),28 Ohio St.3d 345. A motion for a judgment notwithstanding the verdict pursuant to Civ.R. 50(B) tests the legal sufficiency of the evidence. Brooks v. Brost Foundry Co. (May 2, 1991), Cuyahoga App. No. 58065 (unreported). The evidence adduced at trial and the facts established by admissions in the pleadings and in the record are construed most strongly in favor of the party against whom the motion is made, and where reasonable minds could, upon this evidence, reach different conclusions, the motion must be denied. Posin at 275. A review of the trial court's denial of appellant's motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of the action * * *. Shore, Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10, 13; See, also, Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124, 127. The elements of a breach of contract claim are summarized as follows: "[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95, 108.
The provisions of the purchase agreement at issue are as follows: 2. Purchaser agrees to purchase the real estate, improvements and fixtures in the present condition except as herein expressly set forth, * * * 8. Seller shall furnish to Purchaser at his own cost at or before closing an inspection by a licensed exterminator stating the property is free of infestation or damage by wood destroying insects (infestation and resulting structural damage shall be treated and repaired at Seller's expense, provided that if the cost of structural repair exceeds $500, Seller may terminate this contract unless Purchaser agrees to pay the cost of such structural repair in excess of said amount).
Breach Ms. Lothes and the Estate of Ms. Williams claim the evidence demonstrated sellers did have a termite inspection undertaken and orally delivered the results of such inspection to the plaintiffs. They further maintain the acts of paying for and completing an inspection fulfilled seller's obligation under paragraph 8. We disagree. Paragraph 8 specifically requires not only that the seller furnish to the purchaser an inspection, but that such inspection should state "the property is free of infestation or damage by wood destroying insects." At trial, Ms. Daw testified she telephoned the Moores the day before closing and informed them the termite inspection had been conducted. Ms. Daw noted the house had been previously treated, but there were no termites. Notwithstanding the inaccuracy of this statement, Ms. Daw failed, by her own testimony, to inform the Moores the property was "free of infestation or damage by wood destroying insects." (Emphasis added). Accordingly, we find there was sufficient evidence for the jury to conclude sellers breached paragraph 8 of the purchase agreement. Waiver Defendants argue paragraph 8 of the contract was fulfilled by the delivery of an oral report. However, the defendants alternatively maintain if paragraph 8 of the contract was not fulfilled by the oral report, the Moores waived any deficiency because they proceeded to close on the property without first receiving a copy of the written report. We agree with the trial court, the oral report was sufficient to satisfy paragraph 8. However, it is not the means of delivery, but rather the content of the report that was deficient. Therefore, for the same reasons set forth above, we find the trial court was correct in allowing the breach of contract claim to proceed to the jury, and in denying defendants' motion for notwithstanding the verdict.
Caveat Emptor Next, the defendants maintain the doctrine of caveat emptor precludes any recovery for a defect in the real estate. As a general rule, the doctrine of caveat emptor governs the sale of real property in Ohio. Layman v. Binns (1988), 35 Ohio St.3d 176, syllabus 1. Specifically, the Ohio Supreme Court has held: The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor.
Layman, supra, at syllabus 1.
This doctrine is also applicable when real property is sold in an "as-is" condition. See Tipton v. Nuzum (1992), 84 Ohio App.3d 33, 39; Kaye v. Buehrle (1983), 8 Ohio App.3d 381, 383. Once alerted to this possible defect in the property, the appellants: * * * may not simply sit back and then raise [their] lack of expertise when a problem arises. Aware of a possible problem, a buyer has a duty to either to [sic] (1) make further inquiry of the owner, who is under a duty not to engage in fraud, Layman, 35 Ohio St.3d at 177, 519 N.E.2d at 643, or (2) seek the advice of someone with sufficient knowledge to appraise the defect.
Tipton, 84 Ohio App.3d at 38.
Applied in Bd. of Edn. Crestview Local School District v. Keener, Richland App. No. 94CA89, unreported. Defendants herein cite this Court's August 20, 1996 Opinion, in which we made the following statement: We find the trial court was correct when it applied the doctrine of caveat emptor. Appellant could have further investigated the termite history of the residence or had further previously been inspections conducted because he was put on notice the residence had treated for termites. Appellant also had the opportunity to inspect "the residence and did so on several occasions. Finally, we determined in appellant's first and second assignments of error that he could not establish a claim for fraud. Thus, it was appropriate for the trial court to apply the doctrine of caveat emptor.
Defendants maintain the doctrine of law of the case requires the same outcome in the present appeal. We disagree. The doctrine of law of the case provides the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. Gohman v. St. Bernard (1924), 111 Ohio St. 726, 730. The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. Id. 730-731. At the outset, we note the appeal in our August 20, 1996 Opinion dealt with appellants' claim against the company which had previously treated the property and did the current inspection. In our August 20, 1996 Opinion, we found the trial court was correct in applying the doctrine of caveat emptor to the Moores' claim against that company. We note the Moores did not receive the company's written report prior to the closing; therefore, we found no detrimental reliance on the part of the Moores. In the matter sub judice, the relative positions and claims of the parties are quite different. The issue before this Court is whether the doctrine of caveat emptor should apply to preclude a claim for breach of contract against the sellers, as opposed to a claim against the termite inspection company in fraud. We find it cannot. Paragraph 2 of the purchase agreement specifically excepted the "as-is" provisions of the purchase agreement from any specifically enumerated provision contained within the purchase agreement. Paragraph 8 required very specific actions on the part of the sellers regarding the termite report. As noted above, we find sufficient evidence was presented to support the jury's conclusion the defendants failed to take the actions necessary to fulfill their responsibilities under the contract. We find the doctrine of caveat emptor inapplicable in this situation, and decline to apply the doctrine of law of the case, as it would "achieve unjust results." See, Gohman, supra. The first assignments of error set forth by Ms. Daw, Ms. Lothes and the Estate of Ms. Williams, are overruled.
 II
We next address the Moores' argument the trial court abused its discretion in ordering a new trial to redetermine the compensatory damages to which plaintiffs were entitled. In this assignment, the Moores maintain the trial court erred in ordering a remittitur of the original jury award. We disagree. "A court has the inherent authority to remit an excessive award, assuming it is not tainted with passion or prejudice to an amount supported by the weight of the evidence." Wightman v. Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 444. The following criteria must occur before a trial court may grant a remittitur: 1) unliquidated damages are assessed by a jury, 2) the verdict is not influenced by passion or prejudice, 3) the award is excessive, and 4) the plaintiff agrees to the reduction in damages. Id. Neither the Ohio Rules of Civil Procedure nor the Ohio Revised Code contains a specific provision permitting remittitur, however, the practice "has long been established in Ohio." Littleton v. Good Samaritan Hosp. Health Ctr. (1988), 39 Ohio St.3d 86, 103, N.23 (Douglas, J. concurring in part and dissenting in part). A trial court's decision to grant remittitur is subject to reversal only upon a finding the trial court abused its discretion. See, Wightman at 444. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We find no abuse of discretion in the trial court's decision to use the doctrine of remittitur to strike those portions of jury award which were not recoverable under Ohio law for a breach of contract claim. We find no error in the trial court's decision to strike the jury's award for attorney fees, mental anguish, and insurance loss as being excessive as a matter of law. Accordingly, the Moores' first assignment of error is overruled.
 III
In their third assignment of error, Ms. Lothes and the Estate of Ms. Williams assert the trial court erred in failing to find Mr. Moore was not an agent for the sellers; therefore, engaged in an unlawful dual agency. These parties maintain because appellant was a real estate agent employed by the same company which listed the property, he owed fiduciary duties to them as the sellers. Ms. Lothes and the Estate of Ms. Williams further argue Mr. Moore breached his fiduciary duties to them and is, therefore, responsible for any damages assessed against them. We disagree. In support of their argument, Ms. Lothes and the Estate of Ms. Williams direct this court to the relevant provisions of the Ohio Adm. Code controlling on the date of the transaction: No licensee or associate of said licensee, who has entered into an agreement to act as the exclusive agent of the seller with respect to the sale, lease or exchange of the seller's property, shall also act as the exclusive agent of any prospective purchaser of that property unless each party had knowledge and consents in writing to such dual representation. (emphasis added). Ohio Adm. Code Section 1301:5-5-05(B).
In its May 1, 1998 Judgment Entry, the trial court stated:
 Defendants assertion is not proven by a preponderance of the evidence. It was clearly understood between the parties, as borne out in their subsequent actions, that Harold Moore, Jr. was an agent for himself and his wife. Betty Daw was the agent for the sellers. Any other interpretation of the agency disclosure statement in light of all the evidence would be contrary to the manifest weight of the evidence.
May 1, 1998 Judgment Entry at p. 5.
We agree with the trial court. The evidence presented conclusively establishes neither Mr. Moore nor Ms. Daw was the "exclusive" representative of both buyer and seller in this transaction. Rather, Mr. Moore represented the buyers and Ms. Daw represented the sellers. In other words, even though both Mr. Moore and Ms. Daw were agents of the listing broker, no dual agency was contemplated because neither agent acted as the exclusive representative for both the buyer and the seller. The third assignment of error set forth by Ms. Lothes and the Estate of Ms. Williams is overruled.
 IV
Ms. Daw, Ms. Lothes, and the Estate of Williams submit in their second assignments of error the trial court erred in ruling the new trial after the remittitur would be limited to a determination of compensatory damages. We find the trial court's May 3, 2000 Judgment Entry, which schedules a jury trial on compensatory damages only, is interlocutory. Accordingly, we find any appellate review of the trial court's May 3, 2000 Judgment Entry premature. This portion of Ms. Lothes', the Estate of Williams' and Ms. Daw's second assignment of error is overruled.
The March 16, 2000 Judgment Entry of the Muskingum County Court of Common Pleas is affirmed. The May 1, 1998; and May 1, 1995 Judgment Entries of the Muskingum County Court of Common Pleas are affirmed. This matter is remanded to the trial court for the completion of the new trial stemming from the Moores' decision to reject the remittitur.
By: Hoffman, P.J. Farmer, J. and Reader, V.J. concur.